**In re Charles V. LOWERY and Suzanne H. Lowery, Debtors.**

**No. 00–06131–3F7.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Sept. 29, 2005.

Keith A. Graham, Orlando, FL, for Cadle.

Chester J. Trow, Ocala, FL, for Debtors.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon The Cadle Company II, Inc.'s Objection to Debtors' Claim of Exemptions. The Objection referred to six insurance policies. The Court previously granted The Cadle Company II, Inc.'s ("Cadle") Motion for Summary Judgment regarding three of the policies and Debtors withdrew their claims of exemption as to two of the other policies, leaving only the Jackson National Life insurance policy No. 0012348670 (the "Jackson policy") at issue. The Court conducted a trial on May 5, 2005. In lieu of oral argument, the Court directed the parties to submit memoranda in support of their respective positions. Upon the evidence presented and the arguments of the

parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtors purchased the Jackson policy December 1, 1988. Once Debtors established the Jackson policy, Debtors paid regularly scheduled annual payments. The Jackson policy contained two separate premium payment plans with two different provisions. The first premium payment plan consisted of a Whole Life with Allocated Risk Premium with Return of Value Accumulation Benefits—NS, requiring annual payments of $4,687.00 for the life of Debtor, Charles Lowery, (the "Annual Premium Plan"). The second premium payment plan consisted of a Single Premium Life Insurance Rider that only required a one time premium payment of $20,238.21.[1]

Debtors paid eleven annual payments of $4,687.00 totaling $51,557.00 to the Jackson policy from December 1988 until Debtors' August 10, 2000 bankruptcy filing. Debtors' payments increased the cash value of the Annual Premium Plan from zero to $49,094.55. The difference between the payments made by Debtors on the Jackson policy and the resulting cash value of the Jackson policy is $2,462.45.

In addition to the benefit of the cash value, Debtors also received the benefit of life insurance coverage by making the payments to the Jackson policy. As of December 1, 1999 the death benefit to Debtors totaled $129,097.19.

The Circuit Court of the Seventeenth Judicial Circuit of the State of Florida in and for Broward County (the "Circuit Court") entered a Final Judgment ordering Debtors to pay Cadle $2,002,287.31. The $2,002,287.31 judgment is a result of a mortgage agreement between Debtors and RTC Mortgage Trust ("RTC") and/or their predecessors on a parcel of property in Broward county. Cadle and Debtors stipulated to the admission of Ryan O'Lear's affidavit, which established that on April 30, 1989 Debtors defaulted on the $800,000.00 note held by Cadle's predecessor, RTC.

The Circuit Court entered a Summary Judgment in Foreclosure on March 13, 1995 in favor of RTC. The judgment ordered Debtors to pay RTC $447,258.86. Subsequent to the judgment being entered, Cadle was substituted, in place of RTC, as the creditor entitled to receive the judgment entered against Debtors. Five years after the Circuit Court entered the Summary Judgment Cadle established a prima facie entitlement to the deficiency. On March 2, 2000, the Circuit Court entered a Final Judgment which ordered Debtors to pay Cadle $2,002,287.31, which amounted to principal plus interest from May 30, 1995.

### CONCLUSIONS OF LAW

The burden is on a creditor who objects to a debtor's claim of exemption to establish by a preponderance of the evidence that the debtor is not entitled to the exemption claimed. Fed. R. Bankr.P. 4003(c) (2005); *See also In re Ehnle*, 124 B.R. 361, 363 (Bankr.M.D.Fla.1991). Cadle asserts the Jackson policy is not exempt under Florida Statute § 222.14, because Debtors fraudulently converted nonexempt funds to exempt funds by paying annual premium payments to the Jackson policy. Pursuant to Florida Statute § 222.30 assets are not exempt if a debtor executes a fraudulent conversion of nonexempt assets to exempt assets.[2] Section

---

1. The single premium rider is not at issue due to the fact that it has a zero balance.

2. Section 222.30 provides the following:

222.30 adopts the definitional section from Florida Statutes § 726, "unless the application of a definition would be unreasonable." This cross-referencing of the two statutory provisions suggests that they are to be read in tandem. *In re Levine,* 134 F.3d 1046, 1053 (11th Cir.1998). Cadle asserts that Debtors' annual payments to the Jackson policy constitute a fraudulent conversion pursuant to 726.106(1). Florida Statute § 726.106(1) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation *without receiving a reasonably equivalent value in exchange for the transfer or obligation* and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

FLA. STAT. 726.106 (1988) (emphasis added).

Cadle argues that the eleven payments made by Debtors to the Jackson policy from December 1989 until Debtors' August 10, 2000 bankruptcy filing constitute a fraudulent conversion because 1) Debtors did not receive reasonably equivalent value in exchange for the transfer of funds to the Jackson policy and 2) Debtors were insolvent during the time period they made the payments to the Jackson policy. Debtors argue that the annual payments to the Jackson policy are not fraudulent conversions because 1) they received reasonably

equivalent value for the payments and 2) they were not insolvent while making the payments to the Jackson policy. In support of their position, Debtors assert that there is only a nominal difference between the total of the annual payments made by Debtors and the resulting cash value of the Jackson policy.

■ "A payment, ordinarily for services actually rendered, can only be attacked as a fraudulent transfer on the theory that what the debtor received was either worthless or had value less than reasonable equivalent for the monies paid for the services." *In re 21st Century Satellite Communications, Inc.,* 278 B.R. 577, 582 (Bankr.M.D.Fla.2002). Furthermore, a court can consider the "specific facts and circumstances relevant to the transaction" in order to determine whether a debtor received reasonably equivalent value. *Id.* In the case at hand, Cadle established that the Jackson policy has a cash value of $49,094.55. Cadle also presented evidence that Debtors made eleven annual payments of $4,687.00 totaling $51,557.00. Thus, Debtors' payments on the Jackson policy would total $51,557.00. The difference therefore between the payments made by Debtors and the resulting cash value of the Jackson policy is $2,462.45.

In order for the Court to determine that Debtors' payments to the Jackson policy were fraudulent, Cadle must prove that the Jackson policy is either worthless or

---

(1) As used in this section, "conversion" means every mode, direct or indirect, absolute or conditional, of changing or disposing of an asset, such that the products or proceeds of the asset become immune or exempt by law from claims of creditors of the debtor and the products or proceeds of the asset remain property of the debtor. The definitions of chapter 726 apply to this section unless the application of a definition would be unreasonable.

(2) Any conversion by a debtor of an asset that results in the proceeds of the asset becoming exempt by law from the claims of a creditor of the debtor is a fraudulent asset conversion as to the creditor, whether the creditor's claim to the asset arose before or after the conversion of the asset, if the debtor made the conversion with the intent to hinder, delay, or defraud the creditor. FLA. STAT. 222.30 (1993).

worth substantially less than what Debtors paid for the policy. The cash value of the policy is only $2,462.45 less than the monies paid by Debtors. In addition to the cash value Debtors also received the life insurance benefit. As of December 1, 1999, the Jackson policy death benefit totaled $129,097.19. The Court finds that the value of the policy is neither worthless nor worth substantially less than what Debtors paid for it.

Accordingly, the Court finds that Debtors received reasonably equivalent value in exchange for the payments made to the Jackson policy. Having found that Debtors received reasonably equivalent value for the monies paid on the Jackson policy, the Court need not determine whether Debtors were insolvent while they made the annual payments to the Jackson policy.

### CONCLUSION

Based upon the foregoing, the Court finds Cadle failed to prove by a preponderance of the evidence that Debtors are not entitled to the exemption claimed. Therefore, pursuant to Florida Statute § 222.14 the Jackson policy is exempt. The Court will enter a separate order in accordance with these Findings of Fact and Conclusions of Law.